IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BARBARA A. HORTON,

        Plaintiff,

vs.                                Civ. No. 05-1273 ACT

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court upon Plaintiff=s Motion to Reverse or Remand the Administrative Agency Decision filed July 19, 2006.  Docket No. 22.  The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is not well taken and will be denied.

## I.  PROCEDURAL RECORD

    Plaintiff, Barbara A. Horton, applied for Disability Insurance Benefits on July 15, 2003. Plaintiff alleged she became disabled on March 1, 2001, due to Aischial/subgluteal bursitis 3%@, diverticulitis and asthma.  Tr. 70, 231, 233, 240.  The application was denied at the initial and reconsideration level.  The ALJ conducted a hearing on March 29, 2005.  Tr. 222.  At the hearing, Plaintiff was represented by counsel.  On May 24, 2005, the ALJ issued his decision and found that

pursuant to the Agrids@ Plaintiff was not disabled.  Tr. 15-21.  Thereafter, the Plaintiff filed a request

for review.  On November 22, 2005 the Appeals Council issued its decision denying Plaintiff=s request

for review and upholding the final decision of the ALJ.  Tr. 5.  The Plaintiff subsequently filed her

Complaint for court review of the ALJ=s decision on  December 6, 2005.

Plaintiff was born on March 24, 1948.  Tr. 53.  She has a high school degree and previous

work experience as a supervisor of transportation and in a receiving department. Tr. 83, 105.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner=s final

decision is supported by substantial evidence and whether she applied correct legal standards.  *See*

*Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992);

*Glenn v. Shalala*, 21 F.3d 983 (10th Cir. 1994).  Evidence is substantial if Aa reasonable mind might

accept [it] as adequate to support a conclusion.@ *Andrade v. Secretary of Health and Human Svcs.*,

985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir.

1983) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other

evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862

F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a clamant must establish a severe physical

or mental impairment expected to result in death or last for a continuous period of twelve months,

which prevents the claimant from engaging in substantial gainful activity.  *See* 42 U.S.C.

' 423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).  The

regulations of the Social Security Administration require the Commissioner to evaluate five factors

in a specific sequence in analyzing disability applications. 20 C.F.R. ' 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. '' 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id*.

### III. MEDICAL HISTORY

 Plaintiff was injured on the job on May 22, 1992. She saw R. John Woods, M.D. on May 26, 1992 for evaluation of right hip pain. Dr. Woods found that Plaintiff walked with a normal gait and was able to squat. She was also able to perform right hip abduction and extension. Dr. Woods diagnosed Plaintiff with a contusion, prescribed Vicodin and instructed her to apply moist heat to the area and stretch. Tr. 149. Treatment notes from May 26, 1992 to January 25, 1993 indicate that chiropractic treatment helped to relieve Plaintiff=s pain. Tr. 165-66.

Plaintiff sought treatment from an urgent care center for her back pain on February 16, 1993. Tr. 146.

In May of 1993, Plaintiff saw Ronald W. Racca, M.D. for right hip pain. Tr. 162-163.

Plaintiff told Dr. Racca that she had been on light duty status until a couple of weeks ago. Tr. 162. She also told Dr. Racca that she has received treatment for a chiropractor for six months and it gave her temporary relief. *Id.* She also stated that she did not take any medication and had not worn a brace. *Id.* Dr. Racca=s report indicates that x-rays were taken of her lumbar spine and were negative except for a bone spur on the left body of L4. Tr. 163. Dr. Racca found that Plaintiff was able to return to her Aregular duties.@ Tr. 163.

Plaintiff began seeing Brian P. Delahoussaye, M.D. on August 24, 1993. He found that Plaintiff had tenderness of the gluteus maximum area and trigger points in the gluteus medius, piriformis, and hamstrings, as well as tightness of the right hamstring. Tr. 181. He also found that Plaintiff had full strength in all her extremities and that hip flexion, abduction and external rotation were not painful. Tr. 181-82. Dr. Delahoussaye noted that three trigger point injections, fluoromethane spray and stretch helped to improve Plaintiff=s Ahip symptomatology.@ Tr. 182. He found that Plaintiff was capable of working at that time. *Id.* An EMG and nerve conduction study were performed on September 14, 1993. The study was normal and showed no evidence of radiculopathy or peripheral neuropathy. Tr. 177. On October 11, 1993, Plaintiff told Dr. Delahoussaye that she was feeling much better. In a letter dated November 23, 1993, Dr. Delahoussaye wrote the following:

> I made reference to the fact that on my initial evaluation on August 24, 1993 that I had felt that the patient was capable of working on a full time basis without restriction. I indicated to her that there had been no change in my recommendations regarding her work status. I further indicated that her only residual problem is mild bursitis and this seems to be clearing up daily.

Tr. 175.

On December 14, 1993, Dr. Racca completed a Physical Capacities Evaluation for the

Workers=Compensation Administration.  Tr. 169-174.  He found that Plaintiff had no physical restrictions, could sit, stand and walk for six hours continuously and could lift and carry up to 100 pounds.  *Id.*

On January 21, 1994, Plaintiff saw Thomas G. Cohn, M.D. for her hip and back pain.  Tr. 193-97.  Plaintiff told Dr. Cohn that she was not on any medications.  She also told Dr. Cohn that Adue to the conflicts with her employer at Wal-Mart, the patient does not feel that she would want to return to work there.@ Tr. 194.  He found good range of motion in Plaintiff=s extremities with no evidence of any restriction in the upper and lower extremities.  Tr. 195.  Strength and gait were also normal.  Tr. 195.  He injected steroids and recommended conservative treatment for Plaintiff=s bursitis.  He found that she could return to work Aon a light duty status.@ Tr. 196.   Dr. Cohn opined that Plaintiff was at maximum medical improvement on March 14, 1994 and that she could return to light work duties.  Tr. 189-90.  She again saw Dr. Cohn on October 13, 1995 for shoulder pain.  Tr. 187-88.  He diagnosed Plaintiff with a shoulder strain and recommended conservative treatment.  He did not see any reason to change Plaintiff=s work status as light duty.

On March 2, 2000, Plaintiff saw a physician at the Presbyterian Medical Group for low back pain.  The physician prescribed Vicodin and heat.  Tr. 218.

Other medical records in the record indicate that Plaintiff had a breast biopsy in February of 1987.  Plaintiff also had problems with her sinuses in 1992, 1993, 1999 and 2002.  Tr. 144, 148, 201, 220 and 216.  She was diagnosed with Anervs of spitz@ and had surgery to remove the tumor on her eyelid in 2004.  Tr. 214-15.

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred in his analysis of Plaintiff≈s credibility and Plaintiff≈s allegations of pain and in determining that Plaintiff had the residual functional capacity (ARFC@) to perform a full range of light work.

Plaintiff≈s burden.

To qualify for benefits Plaintiff must demonstrate, in accordance with the relevant portion of Section 223(d) of the Act, 42 U.S.C. ' 423(d), that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or last or can be expected to last for at least 12 months. 42 U.S.C. ' 416(1)(10). The Act defines a physical or mental impairment as one Athat results from anatomical, psychological or psychological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques.@ 42 U.S.C. ' 423(d)(3). The Commissioner≈s regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques. 20 C.F.R. ' 404.1513. As discussed below, Plaintiff has failed to meet this burden.

Plaintiff≈s alleged onset date is March 1, 2001. Plaintiff≈s insured status for disability insurance benefits expired on March 31, 2001. Tr. 63. Thus the relevant time period is March 1, 2001 through March 31, 2001. To be entitled to benefits, Plaintiff must show that she was totally disabled by March 31, 2001. *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995).

There is simply no medical evidence of the existence of a disabling impairment during the relevant time period.[1] According to the medical records, Plaintiff saw a physician for hip pain in 1994 and shoulder pain in 1995, approximately five to six years before her alleged onset date of March 2001. Tr. 187-88, 193-97. There is documentation of a single visit to a Presbyterian physician in

6

March 2000 related to complaints of lower back pain. Tr. 218. Plaintiff testified in March of 2005, four years after expiration of her disability insurance benefits, that her current treating physician was Dr. Madden. Tr. 231. According to Plaintiff=s testimony he prescribed an analgesic type cream for her hip pain. Tr. 232. The medical records of Dr. Madden show that he performed an annual pap smear, removed sutures from her eyelid, and treated her for a headache in September of 2004. Tr. 207-09. With respect to Plaintiff=s headaches, the records demonstrate that Plaintiff had infrequent sinus headaches in 1992, 1993, 1999, 2002 and 2004. Tr. 144, 148, 201, 209, 220 and 216.

     <u>Credibility finding</u>.

It is well-established in the Tenth Circuit that credibility determinations are the province of the ALJ and furthermore, that the Court may not reweigh the record and make its own *de novo* credibility findings. *Hamilton v. Sec=y of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992; *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).

> The ALJ enjoys an institutional advantage in making credibility determinations. Not only does an ALJ see far more Social Security cases than do appellate judges the ALJ is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ=s credibility findings warrant particular deference.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).

Here, the ALJ provided the following analysis of Plaintiff=s credibility in his written decision:

> The claimant=s testimony and reports of pain and functional restrictions were not supported by the evidence overall in the disabling degree alleged and therefore lacked credibility. Specifically, I note that the claimant=s right hip condition was present at approximately the same level of severity prior to the alleged onset date. The fact that the impairment did not prevent the claimant from light activities prior

7

to her alleged onset date, strongly suggests that this condition would not currently prevent work.  As previously mentioned, the records show that conservative medical treatment has worked well to control the claimant≤s symptoms of pain.

The ALJ also specifically noted that Plaintiff was not taking any medication for pain; that she worked on light duty until April 1993; that Dr. Racca concluded Plaintiff was able to return to her regular work duties on May 4, 1993; and that Dr. Delahoussaye found Plaintiff had Ano physical restrictions@ as of August 24, 1993.@ Tr. 17-18.  Furthermore, the ALJ properly considered Plaintiff≤s daily activities and found they were Anot limited to the extent one would expect for a totally disabled individual.@ Tr. 19.

As required the ALJ≤s credibility findings were Aclosely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.@ *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (ASo long as the ALJ sets for the specific evidence he relies on in evaluating the claimant≤s credibility,@ his credibility evaluation is sufficient.)

The Court also observes that because there was no objective medical evidence of a pain-producing impairment during the relevant time, the ALJ was not required to make a credibility determination.  Social Security Ruling (ASSR@) 96-7p, 1996 WL 374196 (The existence of a medically determinable physical or mental impairment Arequires the adjudicator to make a finding about the credibility of the individual≤s statements about the symptoms(s) and its functional effects.@).

Finally, Plaintiff≤s argument that the ALJ erred in relying on old medical records is without merit as there are no records in the administrative record relevant to the time period at issue. The

Court notes that the Defendant, through the State Disability Determination Services, requested records from three providers, Dr. Cohn, St. Joseph Healthcare System and Presbyterian Healthcare. Tr. 120, 132, 133. Dr. Cohn=s office reported that Plaintiff had last seen Dr. Cohn in 1995. Tr. 129. St. Joseph Healthcare System responded that they could find no evidence of Plaintiff=s medical care in the computer. Tr. 132. Presbyterian Healthcare responded that they had no records for January 1, 2001 to March 31, 2001. Tr. 133.

In addition, there was discussion at the administrative hearing regarding Plaintiff=s lack of medical records during the relevant time period. Tr. 236-37. Counsel for Plaintiff stated that the medical records submitted were for 1993-1995. Tr. 236. The ALJ gave counsel 20 days to supplement the record with additional medical records. Tr. 237. The ALJ received three sets of records subsequent to the hearing: records from M. Chipi-Sandoval, M.D. from May of 1998 to April of 1999 regarding abdominal pain and sinus infection [Tr. 200-206]; records from Presbyterian Medical Group from April 2004 to September 2004 regarding pap smear, suture removal from eye surgery; and pneumonia shot [Tr. 207-11]; and a record from Dr. Roberto Flores Vidana, dated September 14, 2004, regarding a surgical removal of a tumor on Plaintiff=s left eyelid [Tr. 12-15]. The Appeals Council received records from Presbyterian Medical group covering five visits: March of 1993 for sinus headache; March of 1997 for a thorn in her hand; March of 2000 for low back pain; October of 2000 for anxiety; and August of 2002 for sinusitis. Tr. 216-21.

For the reasons stated, the Court concludes that the ALJ=s credibility determination was supported by substantial evidence and consistent with the pertinent regulatory criteria.

<u>Pain allegations</u>.

Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff=s complaints of pain. Plaintiff alleges she has disabling pain as a result of chronic bursitis, right shoulder pain, lumbar pain, diverticulitis and headaches.  Plaintiff is correct that the ALJ must consider three factors when evaluating a claimant=s complaints of pain:  (1) whether there is objective medical evidence of a pain-producing impairment; (2) whether there is a loose nexus between this objective evidence and the pain; and (3) whether, in light of all the evidence, both objective and subjective, the pain is disabling.  *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (*citing Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).

In determining Plaintiff=s RFC, the ALJ stated that he considered Plaintiff=s Asymptoms, including pain and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR ' 404.1529, [AHow we evaluate symptoms, including pain.@] and Social Security Ruling 96-7p.@ Tr. 17.

The regulations and SSR 96-7p require evidence of a medically determinable impairment Athat could reasonable be expected to produce...symptoms, such as pain.@ 20 C.F.R. ' 4040.1529(b); SSR 96-7p, Purpose 1.  The Regulations specifically state that pain Awill not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that medically determinative impairment(s) is present.@ *Id.*

As discussed above there are no contemporary medical records to support Plaintiff=s complaints of pain during the month of March 2001.  Moreover, as discussed in this opinion, the records in the administrative record do not support disabling pain.  Thus, the ALJ properly

followed the pertinent standards cited in his opinion.  The Court also notes that the ALJ did not

find that Plaintiff was without pain.  Rather, he found that Ato the extent that the claimant alleges

an inability to perform any significant work activity on a sustained basis,@ her allegations were not

fully credible.  Tr. 17.  And in finding that Plaintiff has the RFC for light work, the ALJ noted that

this assessment Aallows for many of her subjective complaints and limitations.@ Tr. 17.

    Thus, the Court concludes, for the above-stated reasons, that the ALJ=s analysis of alleged

disabling pain was supported by substantial evidence and consistent with regulatory criteria.

    <u>Residual functional capacity</u>.

    The determination of a claimant=s RFC is the extent to which the claimant=s impairments

and related symptoms affect her capacity to do work-related activities.  SSR 96-5p; SSR 96-8p.

A person=s RFC is what an individual can still do despite her limitations. 20 C.F.R. '' 

404.1545(a); 416.945(a); SSR 96-8p, 1996 WL 374184 at *2.  In this matter, the ALJ determined

that Plaintiff has the RFC to perform  light work activity.  Tr. 21.  The ALJ properly relied on the

opinions of Plaintiff=s treating physicians.  Tr. 17-18.  The ALJ  stated specifically in his opinion

that AI must also emphasize the fact that my assessment is consistent with the opinions of the

claimant=s treating physicians.@Tr. 19. As discussed above, Drs. Racca and Delahoussaye found

that Plaintiff was able to return to work and Dr. Cohn found that Plaintiff could work on Alight

duty.@ Tr. 162, 182, and187-88.

     Plaintiff argues that she did not perform light work prior to her alleged onset date.

Plaintiff relied on her earnings record that showed she did not work from 1994 to 1996 and did

not engage in substantial gainful activity from 1997 to 2001.  It appears that the Plaintiff wants

the Court to infer she could not work prior to her alleged onset date simply because she did not

work during certain earlier years.  The Court finds no legal support for this inference.  Moreover, the objective medical evidence does not support such an inference, and indeed, is to the contrary.  In addition, Plaintiff=s own statements do not support such an inference.  In her Disability Report, she explained that one of the reasons she stopped working on August 14, 2001 was A[b]ecause my husband is retired@ as well as pain.  Tr. 70.  Plaintiff told Dr. Cohn that she did not want to return to work at Wal-Mart Adue to conflict with her employer.@  Tr. 192.   Plaintiff testified at the administrative hearing that she and her husband summer in Virginia City, Nevada where she also works part-time.  She stated that she considered herself and her husband Apretty much retired.@ Tr. 227, 241.

The Court concludes that the ALJ=s RFC finding was supported by substantial evidence and consistent with regulatory criteria.

Harmless error.

To the extent that the ALJ committed error in his analysis, the Court finds any such error to be harmless.  *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004) (concluding that principle of harmless error can be applied to social security cases where, based on material considered by the ALJ, a court can confidently say that no administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way.)  Disability is a medical determination and Plaintiff cannot establish a disability without some medical evidence as to her condition during the relevant time period.  Here, Plaintiff did not carry her burden as there are no medical records in the administrative record demonstrating she was incapable of doing any work on a sustained basis during the relevant time period.

**IT IS THEREFORE ORDERED** that Plaintiff=s Motion to Reverse or Remand

Administrative Decision is DENIED for the reasons set out in this memorandum  opinion and

order, and that the matter is DISMISSED, with prejudice.


_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**


---

[1] The Court is aware that medical records other than in the relevant time period may be sufficient evidence of a disability during the relevant time period.  However, evidence of an actual disability is required. *Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1348-49 (10th Cir. 1990).  In this case, there is no medical evidence of an actual disability.